IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 17-00145 JMS |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 54 |
| vs. | |
| JOHN OFA, | |
| Defendant. | |

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 54**

## I. **INTRODUCTION**

Defendant John Ofa ("Defendant") moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from FCI Terminal Island based on a pre-existing medical condition and the COVID-19 pandemic.  ECF No. 54.  The court decides the motion without a hearing under Local Rule 7.1(c).  Based on the following, the motion is DENIED.

## II. **BACKGROUND**

Defendant is a 30-year old inmate incarcerated at FCI Terminal Island.  Presentence Investigation Report ("PSR") at 2, ECF No. 44 at PageID #125.  Defendant began serving his sentence on September 10, 2018, ECF No. 50,

1

and is scheduled for release from FCI Terminal Island on December 11, 2022.  *See*

https://www. bop.gov/inmateloc/ (last visited August 3, 2020).

On March 5, 2018, Defendant pled guilty to Count I of an Indictment

charging him with conspiracy to distribute and possess with intent to distribute

fifty grams or more of methamphetamine.  ECF Nos. 17, 39.  On July 30, 2018,

this court sentenced Defendant to a term of sixty months imprisonment, and three

years of supervised release.  ECF No. 48.

Defendant submitted a request for compassionate release to FCI

Terminal Island's Warden on April 20, 2020.  *See* ECF No. 54-2.  No response was

received.  On June 23, 2020, Defendant, represented by counsel, filed the instant

motion for compassionate release, seeking a sentence reduction to time served or to

permit him to serve the remainder of his sentence in home confinement.  ECF No.

54 at PageID #226.  On July 8, 2020, the Government filed its Response.  ECF No.

56.

///

///

///

///

///

# III. <u>DISCUSSION</u>

## A.    Legal Standards

Defendant moves for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A), as amended by the First Step Act of 2018,[1] which provides as

relevant:

> [T]he court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the
> term of imprisonment . . . after considering the factors set
> forth in [18 U.S.C.] section 3553(a) to the extent that
> they are applicable, if it finds that—
>
>        (i) extraordinary and compelling reasons warrant
> such a reduction;
> . . . .
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission[.]

Thus, the court may reduce Defendant's sentence if: 1) Defendant has

exhausted the required administrative remedies; 2) Defendant has shown that

"extraordinary and compelling reasons" warrant the reduction; and 3) the reduction

is consistent with applicable Sentencing Commission's policy statements.  Here,

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

the Government concedes the first prong—Defendant has exhausted his

administrative remedies.  ECF No. 56 at PageID #267.

The United States Sentencing Commission's policy statement, United

States Sentencing Guideline ("Guideline") § 1B1.13, provides (again, as relevant

to Defendant) that the court may grant a motion for compassionate release only if,

after consideration of the applicable § 3553(a) factors, the court determines that

extraordinary and compelling reasons exist to warrant a sentence reduction, the

defendant is not a danger to another person or to the community, and a sentence

reduction is consistent with the policy statement.

Guideline §1B1.13 provides three specific examples of extraordinary

and compelling reasons for compassionate release—the defendant's terminal

medical condition, deterioration of health due to advanced age, and extenuating

family circumstances—along with a fourth, catch-all provision granting discretion

to the Bureau of Prisons ("BOP") Director to determine whether other

extraordinary and compelling reasons exist.  *See* Guideline § 1B1.13 n.1(A)-(D).

In a detailed analysis, this court previously determined that the "discretion to

determine whether 'other' extraordinary and compelling reasons exist granted by

[Guideline § 1B1.13 n.1(D)] to the BOP Director applies equally to the court when

ruling on motions for compassionate release."  *United States v. Hernandez*, 2020

WL 3453839, at *4 (D. Haw. June 24, 2020).  The court incorporates that analysis

here.

## B.     Extraordinary and Compelling Reasons

Defendant bears the burden to establish extraordinary and compelling

reasons warrant compassionate release.  *See, e.g.*, *United States v. Bolden*, 2020

WL 4286820, at *3 (W.D. Wash. July 27, 2020); *United States v. Proudfoot*, 2020

WL 4284128, at *4 (D. Or. July 27, 2020).  Here, Defendant contends that he

should be released from custody because:  1) he suffers from liver disease and

edema, *see* ECF No. 60 at PageID #334; (2) he is at great risk given that FCI

Terminal Island "is currently battling one of the most serious COVID-10 outbreaks

in the nation," and he is unable to provide self-care in a prison setting, ECF No. 54

at PageID #220; and (3) he previously contracted COVID-19 (and has since

recovered) while at FCI Terminal Island, *see* ECF No. 60 at PageID #334, 343.

The court addresses each of these three arguments.

First, Defendant claims that according to the Centers for Disease

Control and Prevention ("CDC"), individuals with "liver disease" are "particularly

vulnerable to serious COVID-19 illness and/or death."  ECF No. 54 at PageID

#205.  In fact, the CDC reports that individuals with liver disease "might be

at increased risk" for severe illness from COVID-19.  *See*

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

medical-conditions.html  (last visited August 4, 2020).[2]

   Second, although FCI Terminal Island certainly was a COVID-19

"hot spot" several months ago, the same is not true at the present time.  As of May

1, 2020, there were 615 confirmed cases of COVID-19 at FCI Terminal Island.

*See United States v. Fischman*, 2020 WL 2097615, at *2 (N.D. Cal. May 1, 2020).

Now, the Bureau of Prisons ("BOP") reports, as of August 4, 2020, 3 inmates and

6 staff with "confirmed active cases" of COVID-19 at FCI Terminal Island.  *See*

https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited August

4, 2020).  FCI Terminal Island presently houses 935 inmates.  *See*

bop.gov/locations/ institutions/trm/ (last visited August 4, 2020).  Thus, FCI

Terminal Island simply doesn't pose the threat it did several months ago.

   Third, that Defendant previously contracted COVID-19 and has since

recovered counsels, albeit slightly, against a finding of extraordinary or compelling

circumstances to warrant granting the motion for compassionate release.  Little is

---

[2] The medical records provided to the court contain a single reference to liver disease, ECF No. 60 at PageID #334, and thus the court has little to no information concerning the seriousness of Defendant's liver condition and how well it is managed.

still known about the possibility of COVID-19 re-infection.  As stated by the

University of Maryland Medical System:

> There are still many unknowns when it comes to
> coronavirus immunity.  At this time, there is currently no
> way to know if novel coronavirus (SARS-CoV-2)
> induces immunity and how long any immunity could last.
>
> Other types of coronaviruses, such as MERS, do induce
> immunity, often for several years.  Many hope that
> SARS-CoV-2 will behave similarly.
>
> Unfortunately, the data is not cut-and-dry.  Most studies
> of immunity to coronaviruses, including SARS-CoV-2,
> focus on people who had severe disease and were
> hospitalized for their condition.  There is significantly
> less data on the immune response in people who had mild
> symptoms or were asymptomatic.
>
> On the other hand, scientists have not been able to
> confirm any cases of reinfection after novel coronavirus
> recovery.  Some anecdotal evidence has emerged in
> multiple countries.  However, it's possible that these
> patients falsely tested negative for the virus after their
> symptoms subsided and continued to harbor the virus.
>
> All of these unknowns are why the Centers for Disease
> Control and Prevention and the World Health
> Organization currently state that there is no evidence to
> suggest novel coronavirus infection imparts immunity.
> More research needs to be done.

*Coronavirus Immunity*, Univ. of Maryland Medical System,

https://www.umms.org/coronavirus/what-to-know/diagnosis-symptoms/immunity

(last visited August 4, 2020).  The CDC has made a similar statement:

7

> The immune response, including duration of immunity,
> to SARS-CoV-2 infection is not yet understood.  Patients
> infected with other betacoronaviruses (MERS-CoV,
> HCoV-OC43), the genus to which SARS-CoV-2 belongs,
> are unlikely to be re-infected shortly (e.g., 3 months or
> more) after they recover.  However, more information is
> needed to know whether similar immune protection will
> be observed for patients with COVID-19.

*Clinical Questions About COVID-19*, Center for Disease and Control,

https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last visited August 4,

2020) ("Can people who recover from COVID-19 be reinfected with SARS-COV-

2?").  Some courts have concluded that the dangers associated with COVID-19 are

not a ground for relief for someone who had the disease and recovered.  *See e.g.*,

*United States v. Molley*, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020);

*United States v. Malecki*, 2020 WL 4013050, at *5 (W.D.N.Y. July 16, 2020);

*United States v. Zubkov*, ___ F. Supp. 3d ___, 2020 WL 2520696, at *3 (S.D.N.Y.

May 18, 2020); *United States v. Hennessey*, 2020 WL 4209020, at *1 (D. Minn.

July 22, 2020).  Others have concluded an inmate recovered from COVID-19 may

still be able to demonstrate extraordinary circumstances justifying release from

custody.  *See United States v. Yellin*, 2020 WL 3488738, at *3 (S.D. Cal. June 26,

2020); *United States v. Sholler*, ___ F. Supp. 3d ___, 2020 WL 2512416, at *5

(N.D. Cal. May 15, 2020).

The court concludes that based on the existing evidence, Defendant has failed to demonstrate that extraordinary and compelling reasons exist to justify compassionate release.  Although Defendant's liver disease "might" place him at a higher risk, he has no other medical conditions that place him at an elevated risk. Further, Defendant is 30 years old, and the number of COVID-19 cases at FCI Terminal Island has dropped dramatically over the past few months.  And to the extent that Defendant makes a more generalized argument regarding the risk of contracting COVID-19 in a BOP facility, the court disagrees.  *See, e.g.*, *United States v. Drummondo-Farias*, ___ F. Supp. 3d ___, 2020 WL 2616119, at *5 (D. Haw. May 19, 2020) ("Additionally, '[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]'") (quoting *United State v. Eberhart*, ___ F. Supp. 3d ___, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)).

## C.    Section 3553(a) Factors

The court also concludes that a consideration of the § 3553(a) factors counsels against granting the early release.  Although Defendant qualified for the safety valve at sentencing, and has a minimal criminal history, *see* PSR ¶¶ 32, 44

ECF No. 44 at PageID #131,[3] he was involved in a serious offense—a conspiracy to distribute and possess with intent to distribute 477 grams of methamphetamine. *See* PSR ¶ 29, *id.* at PageID #131. Further, Defendant has served less than half of his sentence.[4] He began serving his sentence on September 10, 2018, ECF No. 50, and is scheduled for release from FCI Terminal Island on December 11, 2022. *See* https://www. bop.gov/inmateloc/ (last visited August 4, 2020). Thus, he has served approximately 23 months, and has approximately 28 months left to serve. And in considering the evidence of post-offense developments under § 3553(a), Defendant's completion of drug education programming, *see* ECF No. 54-7, although commendable, does not convince the court that Defendant should be released in light of all other considerations.

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release.

---

[3] Defendant's total offense level 27, Criminal History Category I, resulted in an advisory United States Sentencing Guideline range of 70-87 months incarceration. After taking into account the relevant § 3553(a) factors, the court varied downward to a total sentence of 60 months. In other words, Defendant's 60-month sentence was below the advisory guideline range based on the court's consideration of relevant § 3553(a) factors.

[4] When evaluating the § 3553(a) factors, many district courts have considered the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release. *See, e.g.*, *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, ___ F. Supp. 3d ___, 2020 WL 2307315, at *6 (E.D. Pa. May 8, 2020); *United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

# IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for compassionate

release, ECF No. 54, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 4, 2020.



 /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Ofa*, Cr. No. 17-00145 JMS, Order Denying Defendant's Motion for
Compassionate Release, ECF No. 54